## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**                                    Case No. 20-cv-
and                                                 **Hon.**
**BRENDA HILL,**
              Plaintiffs,

v.

**JOCELYN BENSON**, in her official and individual capacities as the
Secretary of State,
**JANICE WINFREY,** in her official and individual capacities as the
Detroit City Clerk, and
**DETROIT DEPARTMENT OF ELECTIONS,**
              Defendants.
_____/

**ANDREW A. PATERSON (P18690)**
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com
_____/

## COMPLAINT AND JURY DEMAND

    **NOW COME** Plaintiff, ROBERT DAVIS[1] and BRENDA HILL, by

and through their attorney, ANDREW A. PATERSON, and for their

Complaint and Jury Demand ("Complaint"), state as follows:

_____
[1] Prior to filing the instant action, Plaintiff Robert Davis advised counsel that he may want to
proceed *in propria persona* in this case.

## I.     NATURE OF PLAINTIFFS' CLAIMS

1. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and, the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. 1983; 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1367.

3. This Court also has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

4. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391(b)(1). Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

5. Public officials sued in their official capacity "reside" in the county where they perform their official duties. *See O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972).

6. Defendant Jocelyn Benson's principal office is in Lansing, MI, and Defendant Jocelyn Benson performs her official duties in Lansing, MI.

7. Lansing, MI is in the Western District of Michigan. Therefore, venue is proper within the Western District of Michigan under 28 U.S.C. § 1391(b)(1).[2]

8. Events giving rise to the causes of action pled and alleged herein occurred in the Western District of Michigan.

## III.   PARTIES

9. Plaintiffs repeat, reallege and incorporate, the foregoing allegations, as though fully set forth and stated herein.

10.     Plaintiff, Robert Davis ("**Plaintiff Davis**" or "**Plaintiff**"), is a resident and registered voter of the City of Highland Park, County of Wayne, State of Michigan. Plaintiff Davis voted in the August 4,

---

[2] Under 28 U.S.C. § 1391(b)(1) venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The determination of the proper venue for a civil action in federal court is "generally governed by 28 U.S.C. 1391." *Atlantic Marine Const. Co. v U.S. District. Court for W.Dist. of Texas*, 571 U.S. 49, 55 (2013). "[T]he court must determine whether the case falls within one of the three categories set out in 1391(b). If it does, venue is proper[.]" *Id*. at 55.

2020 primary election and intends to vote in the upcoming November 3, 2020 presidential general election.

11.     Plaintiff, Brenda Hill ("**Plaintiff Hill**"), is a registered and qualified voter in the City of Detroit, County of Wayne, State of Michigan.

12.     Defendant, Jocelyn Benson ("**Defendant Secretary of State**"), is the duly elected Secretary of State for the State of Michigan.  Defendant Secretary of State "the chief election officer of the state" with "supervisory control over local election officials in the performance of their duties under the provisions of" the Michigan Election Law, MCL 168.1 *et seq.* Mich. Comp. Laws §168.21.

13.     Defendant, Janice Winfrey ("**Defendant Detroit City Clerk**"), is the duly elected City Clerk for the City of Detroit. Defendant Detroit City Clerk has served continuously as the elected City Clerk for the City of Detroit since January 1, 2006.

14.     Defendant, Detroit Department of Elections ("**Defendant Department of Elections**") is a department created by §3-101 of the 2012 Detroit City Charter that is charged with the

responsibility to plan, monitor, and administer all elections in the City of Detroit. The Defendant Department of Elections is ran and headed by the Defendant Detroit City Clerk.

15.     An actual controversy exists between the Plaintiffs and the named Defendants.

## CAUSES OF ACTION

### COUNT I
**Plaintiffs Davis and Hill Were Denied Equal Protection Under The Law Under The "Class-of-One" Theory By Defendant Secretary of State When She Denied Plaintiffs' Request To Advise and Direct Defendants Detroit City Clerk and Department of Elections As To The Proper Methods of Mailing Absentee Voter Applications To Registered Voters for the November 3, 2020 Presidential General Election.**

16.     Plaintiffs repeat, reallege and incorporate, the foregoing allegations, as though fully set forth and stated herein.

17.     Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.,* this claim is being brought by Plaintiffs Davis and Hill, collectively and individually, against Defendant Secretary of State, in both her official and individual capacities, as the duly elected Secretary of State for the State of Michigan.

18.     Under the Michigan Election Law, Mich. Comp. Laws 168.1 *et seq.*, and specifically Mich. Comp. Laws §168.21, the Defendant Secretary of State is the chief elections officer of the state and has supervisory authority over local election officials, including the Defendants Detroit City Clerk and Department of Elections, performing their duties.

19.     Under Mich. Comp. Laws §168.31 local election officials, including Defendants Detroit City Clerk and Department of Elections, must follow the Defendant Secretary of State's instructions regarding the conduct of elections.

20.     Sometime in April/May 2020, the Defendant Secretary of State advised, from her office in Lansing, MI, the Defendants Detroit City Clerk and Department of Elections that it was lawful for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the August 4, 2020 primary election.

21.     Sometime in April/May 2020, the Defendants Secretary of State and Detroit City Clerk met privately and secretly in Lansing

and conspired to develop a plan for the Defendants Detroit City

Clerk and Department of Elections to unlawfully mass mail

unsolicited absentee voter applications to the registered voters in

the City of Detroit for the August 4, 2020 primary election.

22.     Defendants Secretary of State and Defendant Detroit City

Clerk secretly conspired and developed a plan in Lansing to allow

the Defendants Detroit City Clerk and Department of Elections to

unlawfully mass mail unsolicited absentee voter applications to all

of the registered voters in the City of Detroit in an effort to boost

voter turnout amongst the heavily democratic area for both the

August 4, 2020 primary and November 3, 2020 presidential

general election.

23.     Defendant Detroit City Clerk stated publicly at the May 14,

2020 meeting of the Detroit Election Commission that the

Defendant Detroit City Clerk had "talked with the Secretary of

State and she is in support of a predominantly mail-in election.

She suggests every clerk speak with their legal team before doing

such, but she definitely supports it." (**See Approved Minutes**

**from Detroit Election Commission's May 14, 2020 meeting**

**attached as Exhibit A**).

24.     Complying with the directive and advice given by the

Defendant Secretary of State, in May/June 2020, the Defendants

Detroit City Clerk and Department of Elections unlawfully mass

mailed unsolicited absentee ballot applications to all of the

registered voters in the City of Detroit in violation of Mich. Comp.

Laws §168.759 and the Michigan Court of Appeals' holding in

*Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv*

*denied*, 483 Mich. 907; 762 NW 2d 169 (2009).

25.     Plaintiffs Davis and Hill publicly objected to the Defendants

Detroit City Clerk and Department of Elections unlawfully mass

mailing unsolicited absentee voter applications to all of the

registered voters in the City of Detroit.

26.     In late May or early June 2020, Plaintiff Hill, as a registered

voter in the City of Detroit, received an unsolicited absentee voter

application from the Defendants Detroit City Clerk and

Department of Elections for the August 4, 2020 primary election.

27.    In late May or early June 2020, nonparty Leigh Reed-Pratt,
as a registered voter in the City of Detroit, also received an
unsolicited absentee voter application from the Defendants
Detroit City Clerk and Department of Elections for the August 4,
2020 primary election. (**See The Unsolicited Absentee Voter**
**Application Leigh Reed-Pratt Received from the**
**Defendants Detroit City Clerk and Department of**
**Elections for the August 4, 2020 primary election attached**
**as Exhibit B**).

28.    As a result of the Defendants Detroit City Clerk's and
Department of Elections' unlawful actions of mailing unsolicited
absentee voter applications to all of the registered voters in the
City of Detroit, there was a HUGE increase in voter turnout in the
Democratic stronghold in the City of Detroit for the August 4,
2020 primary election.

29.    In an effort to increase the voter turnout in the Democratic
stronghold for the impending November 3, 2020 presidential
general election, sometime in August 2020 after the August 4,
2020 primary election, the Defendant Secretary of State met

privately in Lansing with Defendant Detroit City Clerk and directed and advised the Defendant Detroit City Clerk that the Defendant Detroit City Clerk had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit who did not return an absentee voter application in the August 4, 2020 primary election.

30.     In early September 2020, complying with the directive and advice given by the Defendant Secretary of State, the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailed absentee voter applications to registered voters in the City of Detroit for the impending November 3, 2020 presidential general election.

31.     On or about Tuesday, September 15, 2020, Plaintiff Hill received, via U.S. Mail, at her home residence an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election. (**See Unsolicited Absentee Voter Application Plaintiff Hill received from Defendants Detroit**

**City Clerk and Department of Elections for the November 3, 2020 general election attached as Exhibit C**).

32.     On or about September 14, 2020, Leigh Reed-Pratt, a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election.

33.     However, prior to the Defendants' unlawful actions of mass mailing unsolicited absentee voter applications to the registered voters in the City of Detroit, Plaintiffs Davis and Hill publicly objected to the Defendants Detroit City Clerk and Department of Elections engaging in such unlawful conduct.

34.     On August 26, 2020, Plaintiff Davis spoke at length with Alecia Brown, Interim Deputy Director of Elections for the City of Detroit, about a number of election-related matters including the Defendant Detroit City Clerk's intentions to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general election.

35.     On August 26, 2020, Plaintiff Davis also spoke with Akilah
Williams, an elections clerk in the Detroit City Clerk's office,
regarding the Detroit City Clerk's internal operations for handling
absentee ballot requests.

36.     On August 26, 2020, both Alecia Brown and Akilah Williams
advised Plaintiff Davis that it was their understanding that the
Defendant Detroit City Clerk Janice Winfrey was preparing to
mass mail **unsolicited** absentee voter **applications** to registered
voters in the City of Detroit for the upcoming November 3, 2020
general election, just as she had done for the August 4, 2020
primary election.

37.     That same day, Plaintiff Hill also was advised by a local
election official purportedly affiliated with the Defendant Detroit
City Clerk's office that the Defendant Detroit City Clerk was
preparing to mass mail **unsolicited** absentee voter **applications**
to registered voters in the City of Detroit for the upcoming
November 3, 2020 presidential general election.

38.     Upon learning of this disturbing information, Plaintiffs
Davis and Hill requested attorney Paterson to send a written

request to Defendant Secretary of State and the State Director of Elections requesting the Defendant Secretary of State to properly advise the Defendant Detroit City Clerk as to the proper methods of conducting the November 3, 2020 presidential general election with respect to mailing of absentee voter applications to registered voters in the City of Detroit.

39.     On August 27, 2020, on behalf of Plaintiffs Hill and Davis, attorney Paterson emailed Defendant Secretary of State and the State Director of Elections a written request respectfully requesting for the Defendant Secretary of State to advise the Detroit City Clerk and her staff on the proper methods of conducting the November 3, 2020 presidential general election. **(See Attorney Paterson's August 27, 2020 Email to Defendants attached as Exhibit D)**.

40.     Because of the urgency of the matter and the exigencies of the impending November 3, 2020 general election, Attorney Paterson's August 27, 2020 written request requested a response from the Defendants by 3 p.m. on August 27, 2020. **(See Attorney**

Paterson's **August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit D**).

41.     As expected, attorney Paterson did not receive a response to Plaintiffs Davis and Hill's request by 3 p.m. on August 27, 2020. Consequently, later that same day at approx. 4:27 p.m., attorney Paterson sent the Defendant Secretary of State a follow-up email requesting a written response by 10 a.m. on August 28, 2020. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit D**).

42.     Again, as expected, Defendant Secretary of State did **not** provide a written response to Plaintiffs Hill and Davis' written request.  Therefore, Defendant Secretary of State's refusal to provide a written response by the deadline set forth in the request constituted a denial of Plaintiffs Davis and Hill's written request. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendants attached as Exhibit D**).

43.     MCL §168.31(1)(b) provides:

The **secretary of state *shall do*** all of the following:

> (b) **Advise and direct local <u>election</u> officials as to the proper methods of conducting elections**.
> (emphasis supplied)

44.    Plaintiff Hill, who is a resident and registered voter in the City of Detroit, is particularly concerned that her vote in the upcoming November 3, 2020 presidential general election may not be properly processed and counted.

45.    Plaintiff Davis believes the Detroit City Clerk is inept and incompetent to properly administer the November 3, 2020 presidential general election, which Plaintiff Davis fears will lead to a multitude of legal challenges challenging the validity of the November 3, 2020 presidential general election.

46.    Thus, pursuant to MCL §168.31(1)(b), Plaintiffs, individually and collectively, properly petitioned and requested the Defendant Secretary of State to "advise and direct local election officials as to the proper methods of conducting elections."

47.    The Defendant Secretary of State deliberately and intentionally ignored Plaintiffs' request for the Defendant Secretary of State to properly advise and direct the Defendants Detroit City Clerk and Department of Elections with respect to

the improper mailing of the unsolicited absentee voter applications to registered voters in the City of Detroit.

48.    Defendant Secretary of State deliberately and intentionally ignored Plaintiffs' properly submitted request because of the secret plan Defendants Secretary of State and Detroit City Clerk had developed for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to the registered voters in the City of Detroit from the upcoming November 3, 2020 presidential general election.

49.    The Defendant Secretary of State processed and handled Plaintiffs' request for the Defendant Secretary of State to advise and direct the Defendant Detroit City Clerk differently than other requests that have been submitted to the Defendant Secretary of State by other individuals and entities requesting her to properly advise and direct local election officials in accordance with Michigan Election Law.

50.    Defendant Secretary of State promptly answered, addressed and investigated other requests that were submitted to the

Defendant Secretary of State's office by other individuals and entities for her to properly advise and direct local election officials in accordance with Michigan Election Law.

51.     Defendant Secretary of State has directed her staff and attorneys to ignore and not to respond and/or address any requests submitted by the Plaintiffs.

52.     Defendant Secretary of State has a personal animus and has publicly expressed ill will towards Plaintiff Davis because Plaintiff Davis has exposed possible criminal wrongdoing committed by the Defendant Secretary of State's husband, who was a former high-level appointee of Detroit Mayor Mike Duggan.

53.     Defendant Secretary of State has expressed animus and ill will towards Plaintiff Davis by stating publicly that she dislikes, hates, and/or despise Plaintiff Davis.

54.     Defendant Secretary of State's deputy, Heaster Wheeler, has stated publicly that the Defendant Secretary of State hates and dislikes Plaintiff Davis and that the Defendant Secretary of State was going to do whatever it took to "shut down" Plaintiff Davis.

55.     Defendant Secretary of State also has animus towards
        Plaintiff Davis because Plaintiff Davis has stated publicly in the
        media that the Defendant Secretary of State is inept and corrupt.

56.     Defendant Secretary of State also has animus towards
        Plaintiff Davis because Plaintiff Davis has successfully sued
        Defendant Secretary of State and has exposed possible unlawful
        conduct committed by the Defendant Secretary of State.

57.     Defendant Secretary of State also has animus and expressed
        ill will towards Plaintiff Hill.

58.     Plaintiff Hill has stated publicly in the media that
        Defendant Secretary of State is inept, corrupt, and incompetent.

59.     Plaintiff Hill has also stated publicly that the Defendant
        Detroit City Clerk is inept, corrupt, and incompetent.

60.     The Defendant Secretary of State treated Plaintiffs' request
        for the Defendant Secretary of State to properly advise and direct
        the Defendant Detroit City Clerk with respect to the law of
        pertaining to mailing unsolicited absentee voter applications
        differently than other similar requests the Defendant Secretary of
        State has received.

61.     Plaintiffs' request was treated differently because of the foregoing animus and ill will the Defendant Secretary of State has towards the Plaintiffs.

62.     The Defendant Secretary of State's unconstitutional and unlawful actions of treating Plaintiffs' request differently than other similarly submitted requests by other individuals violated Plaintiffs' constitutional right to equal protection under the law.

**WHEREFORE**, Plaintiffs Davis and Hill request this Court enters judgment against Defendant Secretary of State as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled;
b. an award of exemplary and punitive damages;
c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
d. a declaration that Plaintiffs Davis and Hill were denied equal protection under the law by the Defendant Secretary of State under the "class of one" theory as a result of the Defendant Secretary of State treating Plaintiffs' request differently than other requests submitted by other individuals; and
e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT II
**Plaintiff Hill's Procedural and Substantive Due Process Rights Were Violated By City of Detroit Defendants With The Unilateral Mailing of Unsolicited Absentee Voter Applications For The November 3, 2020 Presidential General Election.**

63.     Plaintiffs repeat, reallege and incorporate, the foregoing allegations, as though fully set forth and stated herein.

64.     Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq*, this claim is being brought by Plaintiff Hill against Defendants Secretary of State and Janice Winfrey, in their respective official and individual capacities, and the Detroit Department of Elections.

65.     For purposes of the allegations pled in this count, Defendants Detroit City Clerk Janice Winfrey and Detroit Department of Elections are collectively referred to herein as the "**City of Detroit Defendants**".

66.     In an effort to increase the voter turnout in the Democratic stronghold for the impending November 3, 2020 presidential general election, sometime in August 2020 after the August 4, 2020 primary election, the Defendant Secretary of State met privately in Lansing with Defendant Detroit City Clerk  and

directed and advised the Defendant Detroit City Clerk that the Defendant Detroit City Clerk had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit who did not return an absentee voter application in the August 4, 2020 primary election.

67.     In early September 2020, complying with the directive and advice given by the Defendant Secretary of State, the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailed absentee voter applications to registered voters in the City of Detroit for the impending November 3, 2020 presidential general election.

68.     On or about Tuesday, September 15, 2020, Plaintiff Hill received, via U.S. Mail, at her home residence an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election. (**See Unsolicited Absentee Voter Application Plaintiff Hill received from Defendants Detroit City Clerk and Department of Elections for the November 3, 2020 general election attached as Exhibit C**).

69.     On or about September 14, 2020, Leigh Reed-Pratt, a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election.

70.     However, prior to the Defendants Detroit City Clerk and Department of Elections' unlawful actions of mass mailing unsolicited absentee voter applications to the registered voters in the City of Detroit, Plaintiffs Davis and Hill publicly objected to the Defendants Detroit City Clerk and Department of Elections engaging in such unlawful conduct.

71.     The absentee voter application Plaintiff Hill received in the mail at her home on or about September 15, 2020 from the Defendants Detroit City Clerk and Department of Elections was **unsolicited**!

72.     The Defendants Detroit City Clerk and Department of Elections' actions of mailing out **unsolicited** absentee voter **applications** to Hill and other registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general

election were unlawful and violate Mich. Comp. Laws §168.759(5) and the Michigan Court of Appeals' holding in *Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv denied*, 483 Mich. 907; 762 NW 2d 169 (2009).

73.     The City of Detroit Defendants' unlawful actions of mailing **unsolicited** absentee voter applications were arbitrary and capricious and in violation of state law.

74.     Proof that the City of Detroit Defendants' unlawful actions were arbitrary and capricious is the fact that since the Michigan Court of Appeals' ruling in *Taylor v Currie, supra*, the City of Detroit Defendants have **NEVER** mailed **unsolicited** absentee voter applications to all registered voters in the City of Detroit.

75.     In fact, the approved minutes from the City of Detroit Election Commission's May 14, 2020 meeting further illustrates that the City of Detroit Defendants' unlawful actions of mailing **unsolicited** absentee voter applications to Plaintiff Hill and other registered voters in the City of Detroit were arbitrary and capricious. (**See City of Detroit Election Commission's**

**Approved Minutes from May 14, 2020 Meeting attached as Exhibit A**).

76.     The approved minutes from the City of Detroit Election Commission's May 14, 2020 meeting further illustrates that the City of Detroit Defendants and the Defendant Secretary of State had developed a secret plan in Lansing and had deliberate intentions to ignore and violate Michigan Election Law and the Michigan Court of Appeals' holding in *Taylor v Currie, supra*, to increase voter turnout amongst the Democratic base for the upcoming November 3, 2020 presidential primary election by unlawfully mailing **unsolicited** absentee voter applications to Plaintiff Hill and other registered voters in the City of Detroit due to the COVID-19 pandemic. (**Exhibit A**).

77.     However, although the City of Detroit Defendants' intentions were well-intended, the COVID-19 pandemic does not authorize the City of Detroit Defendants to violate Michigan Election Law or binding court orders.

78.    Under Mich.Const.1963, art. 2, § 4(1)(g), Plaintiff Hill has a constitutional right to vote by absentee ballot without having to provide a reason.

79.    Under Mich.Const.1963, art. 2, § 4(1)(g), Plaintiff Hill has a constitutional right to **apply** to vote by absentee ballot in any election held in the City of Detroit.

80.    Under Michigan Election Law, a registered voter must **first request**, either verbally or in writing, from their local city or township clerk an application to vote by absentee ballot.

81.    Under Mich. Comp. Laws §168.759(5), Plaintiff Hill has a statutory right to **request**, either verbally or in writing, an absentee voter **application** from the Defendant Detroit City Clerk.

82.    However, neither the state constitution nor any provision of Michigan Election Law grants the Defendant Detroit City Clerk or any of the other City of Detroit Defendants the right to mail an **unsolicited** absentee voter **application** to Plaintiff Hill.

83.    Under Michigan's Constitution and Michigan Election Law, it is Plaintiff Hill's **right to choose whether to request**, either

verbally or in writing, an absentee voter **application** from the Defendant Detroit City Clerk.

84.     As noted, under Mich.Const. 1963, art. 2, §4(1)(g) and Mich. Comp. Laws §168.759(4), in order for a registered voter to vote by absentee ballot in any election, the registered voter must first request, either verbally or in writing, from their local city or township clerk an absentee voter application.

85.     Plaintiff Hill was denied by the Defendants Secretary of State, Detroit City Clerk, and Department of Elections of her state constitutional and statutory right to request, either verbally or in writing, an absentee voter application from the Defendant Detroit City Clerk.

86.     Because Plaintiff Hill believes that the Defendants Secretary of State, Detroit City Clerk, and Department of Elections' actions of mailing an **unsolicited** absentee voter **application** to Plaintiff Hill for the upcoming November 3, 2020 presidential general election were unlawful and illegal, Plaintiff Hill does not feel comfortable using the **unsolicited** absentee voter **application** the

City of Detroit Defendants mailed her on or about September 15, 2020.

87.     Instead, Plaintiff Hill will vote in person for November 3, 2020 presidential general election.

88.     The City of Detroit Defendants and Defendant Secretary of State, individually and collectively, denied Plaintiff Hill her due process rights by denying Plaintiff Hill her state constitutional and statutory right to choose whether to request, either verbally or in writing, an absentee voter application from the Defendant Detroit City Clerk.

89.     Defendants Secretary of State's, Detroit City Clerk's and Department of Elections' unlawful actions denied Plaintiff Hill of her procedural due process rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

90.     Defendants Secretary of State's, Detroit City Clerk's and Department of Elections' unlawful actions denied Plaintiff Hill of her substantive due process rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

**WHEREFORE**, Plaintiff Hill requests this Court enters judgment against Defendants Secretary of State, Detroit City Clerk Janice Winfrey, and Detroit Department of Elections as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled;

b. an award of exemplary and punitive damages;

c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

d. a declaration that Plaintiff Hill's procedural due process rights have been violated by Defendants Secretary of State, Detroit City Clerk Janice Winfrey, and Detroit Department of Elections;

e. a declaration that Plaintiff Hill's substantive due process rights have been violated by Defendants Secretary of State, Detroit City Clerk Janice Winfrey, and Detroit Department of Elections;

f. a declaration that Defendants Detroit City Clerk Janice Winfrey, and Detroit Department of Elections do not have the legal authority under Michigan's Constitution and/or Michigan Election Law to mail unsolicited absentee voter applications to registered voters in the City of Detroit for any election;

g. an injunction enjoining the Defendants Detroit City Clerk Janice Winfrey and Detroit Department of Elections from mailing unsolicited absentee voter applications to registered voters in the City of Detroit; and

h. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT III
## State Law Claim-Entry of Declaratory Judgment Pursuant to MCR 2.605 Against Defendants Detroit City Clerk and Department of Elections.

91.     Plaintiffs repeat, reallege and incorporate, the foregoing allegations, as though fully set forth and stated herein.

92.     This state-law claim for declaratory judgment is being brought by Plaintiffs Davis and Hill against Defendants Detroit City Clerk and Department of Elections (collectively referred to herein as "**City of Detroit Defendants**") pursuant to MCR 2.605.

93.     This Court has the discretion under 28 U.S.C. §1367 to exercise supplemental jurisdiction over Plaintiffs Davis' and Hill's state-law claim for declaratory judgment pursuant to MCR 2.605.

94.     An actual controversy exists between the Plaintiffs and the City of Detroit Defendants.

95.     Plaintiffs believe the City of Detroit Defendants lack the statutory legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for any election.

96.     Plaintiffs believe the City of Detroit Defendants lack the statutory legal authority to mass mail unsolicited absentee voter

applications to registered voters in the City of Detroit for the November 3, 2020 presidential general election.

97.    The City of Detroit Defendants, based upon the advise and directives given by the Defendant Secretary of State, believe they have the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit, as evident by their actions.

98.    The Court needs to declare the rights of the parties and properly interpret the provisions of Michigan Election Law, specifically being Mich. Comp. Laws 168.759, and the Michigan Court of Appeals' holding in *Taylor v Currie*.

99.    Plaintiffs believe that the City of Detroit Defendants will continue to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit through September 29, 2020.

**WHEREFORE**, Plaintiffs Davis and Hill request this Court enters judgment against Defendants Detroit City Clerk Janice Winfrey and Detroit Department of Elections as follows:

> a. a declaration under MCR 2.605 that Defendants Detroit City Clerk Janice Winfrey and Detroit Department of Elections lack the statutory legal authority under Mich. Comp. Laws 168.759 to mass mail unsolicited absentee

voter applications to registered voters in the City of Detroit for any election, including but not limited to, the November 3, 2020 presidential primary election, and all future elections held in the City of Detroit;

b. an injunction enjoining the Defendants Detroit City Clerk Janice Winfrey and Detroit Department of Elections from mailing unsolicited absentee voter applications to registered voters in the City of Detroit for any election, including but not limited to, the November 3, 2020 presidential primary election, and all future elections held in the City of Detroit; and

c. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: September 17, 2020        Respectfully submitted,

 /s/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

## JURY DEMAND

Plaintiffs, through counsel, respectfully demand a jury trial on all issues triable to a jury.

Dated: September 17, 2020        Respectfully submitted,
/s/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com